1  **KAZEROUNI LAW GROUP, APC**
   Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   Mona Amini, Esq. (SBN: 296829)
3  mona@kazlg.com
   245 Fischer Avenue, Unit D1
4  Costa Mesa, California 92626
   Telephone: (800) 400-6808
5  Facsimile: (800) 520-5523

6  *Attorneys for Plaintiff,*
   Shahriar Noorparvar
7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10 SHAHRIAR NOORPARVAR, individually and on behalf of all others similarly situated,

    Case No.:

    **CLASS ACTION**

    Plaintiff,
    vs.

    SAN FERNANDO VALLEY AUTOMOTIVE, LLC DBA RYDELL CHEVROLET-NORTHRIDGE,

    **COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, seq.**

    Defendant.

    **JURY TRIAL DEMANDED**

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

- 1 -
CLASS ACTION COMPLAINT

# INTRODUCTION

1. Plaintiff SHAHRIAR NOORPARVAR ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant SAN FERNANDO VALLEY AUTOMOTIVE, LLC DBA RYDELL CHEVROLET-NORTHRIDGE ("Defendant") in negligently and/or knowingly contacting Plaintiff, without implied or express consent, on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.

2. In 2015, the Federal Communications Commission noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

3. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."

4. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting

telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13; see also, *Mims*, 132 S. Ct. at 744.

6. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

7. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

8. The United States Court of Appeals for the Ninth Circuit recently held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one

Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

9. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

11. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

12. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

13. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b) because this case arises from violations of the federal law.

14. Because Defendant conducts business within the State of California, personal jurisdiction is established.

15. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Los Angeles, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) many of the acts and transactions giving rise to this action occurred in this district because Defendant:

   (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

(b) does substantial business within this district;

(c) is subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,

(d) the harm to Plaintiff occurred within this district.

## PARTIES

16. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the County of Los Angeles, State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (3).

17. Defendant is, and at all times mentioned herein was, a limited liability company formed under the laws of the State of Delaware with its principle place of business and/or headquarters located at 18600 Devonshire Street, Northridge, CA 91324. Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153 (39). At all times relevant herein, Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS

18. At all times relevant, Plaintiff was a citizen of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

19. Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153 (39).

20. At all times relevant, Defendant conducted business in the State of California and in the County of Los Angeles, within this judicial district.

21. On June 8, 2020 at approximately 3:23 p.m. Pacific Time, Defendant sent Plaintiff an automated text message to Plaintiff's cellular telephone from the number (747) 233-4882 which read:

> "Rydell Chevrolet is confirming request to send a message, reply YES to allow. Reply HELP for help. Msg & data rates may apply.
>
> Reply STOP to cancel"

22. After the above unsolicited text message from Defendant, Plaintiff responded "Stop," indicating that did not want to receive any text messages from Defendant.

23. Following Plaintiff's "Stop" text, Defendant immediately sent Plaintiff an automatic reply text message which read:

> "Rydell Chevrolet: You've been unsubscribed and will no longer receive messages. For questions call (818) 832-1665"

24. Defendant's immediate and automatic form response to Plaintiff's "stop" message is indicative of the use of an automatic telephone dialing system.

25. In light of the nature and character of the unsolicited text message at issue—standardized, impersonal, and consistent in structure and format—the unsolicited text message at issue was sent utilizing ATDS "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

26. Upon information and belief, the hardware and software combination utilized by Defendant has the capacity to store and dial sequentially generated numbers, randomly generated numbers, and/or numbers from a database of numbers. In addition, the hardware and/or software dialing system utilized by Defendant had the capacity to dial numbers without human intervention.

27. Upon information and belief, no human directed the text message to Plaintiff's number.

28. The cellular telephone number Defendant sent the unwanted text message to was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1).

29. Plaintiff did not provide Defendant and/or its agent with prior express consent to send its unwelcomed text messages, including unsolicited text messages via an ATDS, to Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227 (b)(1)(A).

30. The text message Defendant and/or its agent sent to Plaintiff was a pre-written template impersonal text which did not involve any actual human intervention in the drafting or sending of the message.

31. This text message from Defendant constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

32. The unsolicited telephonic communications by Defendant and/or its agent violated 47 U.S.C. § 227(b)(1).

33. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

34. Plaintiff was personally affected because Plaintiff was frustrated and distressed that Defendant harassed Plaintiff with continuous solicitation text messages using an ATDS.

35. Defendant's telephonic communications forced Plaintiff and class members to live without the utility of their cellular phones by forcing Plaintiff and class members to silence their cellular phones and/or block incoming numbers.

36. The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant sent such text messages to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA. In doing so, Defendant invades Plaintiff and similarly situated persons' privacy and violates the spirit and intent behind the TCPA.

37. Through the aforementioned conduct, Defendant violated the TCPA, 47 U.S.C. §§ 227, et seq.

## STANDING

38. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims states: (a) valid injuries in fact; (b) which are traceable to the conduct of Defendant; and (c) are likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *Injury In Fact*

39. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

40. For an injury to be "concrete" it must be "*de facto*", meaning that it actually exists. *Eichenberger v. ESPN, Inc*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiff has suffered a concrete injury as Defendant sent at least one unsolicited text message to Plaintiff's cellular telephone using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All these injuries are *de facto* and concrete.

41. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy by sending at least one unsolicited text message to Plaintiff's cellular telephone using an ATDS. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### *Traceable to Defendant's Conduct*

42. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

43. The above text message is directly and explicitly linked to Defendant. The text message itself indicates that Defendant sent the message to Plaintiff. Each text message begins with "Rydell Chevrolet," which is Defendant's business name. The text message at issue is the sole source of Plaintiff's and the Class members' injuries. Therefore, Plaintiff has illustrated facts that show that Plaintiff's injuries are traceable to the conduct of Defendant.

*Redressability*

44. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

45. In the present case, Plaintiff's Prayer for Relief below includes a request for damages for each text message sent by Defendant, as authorized by statute pursuant to 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

46. Because on the foregoing, Plaintiff has Article III standing to sue Defendant on the claims stated herein.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this class action on behalf of himself individually on behalf of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23 (the "Class"). The Class which Plaintiff is a member of and seeks to represent is defined as follows:

> All persons throughout the United States to whom Defendant and/or its agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, without prior express consent, within four years preceding the date of this complaint through the date of class certification.

48. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

49. Plaintiff reserves the right to redefine the classes and to add subclasses as appropriate based on discovery and specific theories of liability.

50. Numerosity: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

51. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. Thus, this matter should be certified as a class action as disposition of the claims in a class action will assist in the expeditious litigation of this matter and provide substantial benefits to the parties and the Court.

52. <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

53. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

54. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to Plaintiff's cellular telephone from an ATDS. Thus Plaintiff's injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver a text message to Plaintiff's cellular telephone number.

55. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

56. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

57. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

58. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as

demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

59. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

60. Plaintiff will vigorously pursue the claims of the members of the class.

61. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

62. Plaintiff's counsel will vigorously pursue this matter.

63. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

64. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

65. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

66. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including, but not limited to, the following:

- Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message/s (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;
- Whether Defendant can meet its burden of showing it obtained and had valid prior express consent (i.e., consent that is clearly and unmistakably stated);
- Whether Defendant's conduct was knowing and/or willful;
- Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and
- Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.
- Whether Plaintiff and the Class are entitled to any other relief.

67. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and

incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

68. Plaintiff and the Class Members have all suffered and will continue to suffer irreparable harm and damages as a result of Defendant's unlawful conduct.

69. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

70. Defendant and/or its agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. § 227(B)(1)(A)(III)

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, et seq.

73. Defendant and/or its agents placed unsolicited text message to Plaintiff's cellular telephone and the other members of the TCPA Class using an ATDS.

74. Defendant sent these text messages *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

75. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

76. As a result of Defendant's negligent violations of the TCPA, Plaintiff the Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

77. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227, *ET SEQ.*

78. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

79. The foregoing acts and omissions constitute numerous and multiple knowing and/or willful violations of the TCPA by Defendants, including but not limited to violations of each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

80. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

81. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff the Class members are also entitled to, and do seek, an award of treble damages as provided by statute, of $1,500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C).

82. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any Subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

- An Order declaring Defendants' conduct, as alleged above, was in violation of the TCPA;

- Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) requiring Defendant to cease all unsolicited text messaging activity to Plaintiff and the Class and prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system ("ATDS") without obtaining the recipient's prior express consent to receive such telephonic communications via the use of such equipment in the future;

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's negligent violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to, inter alia, California Code of Civil Procedure § 1021.5;

- Post-judgment interest; and

- Any other relief the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: June 23, 2020                                   Respectfully submitted,

                                                        **KAZEROUNI LAW GROUP, APC**

By:   s/ Abbas Kazerounian
       ABBAS KAZEROUNIAN, ESQ.
       MONA AMINI, ESQ.
       *Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626